IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:08-CV-497-RJC-DCK

| | |
|---|---|
| ADVENTUS AMERICAS, INC., and ENVIROMETAL TECHNOLOGIES, INC., <br><br> Plaintiffs, <br> v. <br><br> CALGON CARBON CORP., and AST ENVIRONMENTAL, <br><br> Defendants. | ORDER |

**THIS MATTER IS BEFORE THE COURT** on the "Motion to Dismiss or Stay" (Document No. 16) filed by Defendant Calgon Carbon Corporation ("Calgon") and the "Motion to Dismiss or Stay" (Document No. 18) filed by Defendant AST Environmental ("AST"). Adventus Americas, Inc. ("Adventus") and EnviroMetal Technologies, Inc. ("ETI") (collectively "Plaintiffs") oppose the motions. As both motions seek dismissal or stay of this case, and for reasons more fully discussed herein, the undersigned will rule on the alternative basis, *i.e.* the requests for stay. This matter has been referred to the Magistrate Judge, and is ripe for review. Having carefully considered the entire record, including the parties' briefs and exhibits (Document Nos. 16-19, 24-25), the undersigned will **grant** the requested stay for the following reasons:

### I. Issues Before the Court

In their respective motions, the Defendants move to dismiss Plaintiffs' Amended Complaint on the basis that the Plaintiffs lack standing to bring this patent infringement suit. Alternatively, they move to stay this action pending resolution of *Remediation Products, Inc. v. Adventus Americas,*

*Inc.*, Case No. 3:07-cv-153-RJC-DCK (the RPI Case), which concerns the asserted non-infringement and invalidity of six patents also at issue in the present case. The specific patents are U.S. Patent Nos. 5,266,213 and 5,534,154 (hereinafter "the '213 and '154 patents") and U.S. Patent Nos. 5,411,664; 5,480,579; 5,618,427; and 6,083,394 (hereinafter "the Grace patents"). Defendants assert that a decision or settlement in the *Remediation v. Adventus* case would moot the present action, and that, in the interests of fairness and judicial economy, a stay of the present case is appropriate.

## II. Background

The history of both cases will be briefly summarized. These cases arise out of a dispute over alleged patent infringement between business competitors in the field of environmental remediation. Adventus and ETI market, license, and/or perform remediation of contaminated groundwater as licensees or sub-licensees of the six patents at issue here. Remediation Products, Inc. ("RPI") developed, markets and uses a separate product, BOS100®, in its own remediation work, specifically the removal of chlorinated compounds and hydrocarbons from contaminated soils and groundwater. Calgon manufactures BOS 100® for RPI, and AST is RPI's preferred regional installer at contaminated sites.

In early 2005, Adventus and ETI contacted RPI to demand licensing royalties under two patents ('213 and '154) and indicated that they intended to enforce their rights under those two patents. The parties were unable to resolve their dispute, and on April 6, 2007, RPI filed a complaint, seeking a declaration of non-infringement and invalidity of the two patents. *Remediation Products, Inc. v. Adventus Americas, Inc.*, Case No. 3:07-cv-153-RJC-DCK. Adventus and ETI counterclaimed, alleging infringement of the two patents ('213 and '154) and infringement of four additional patents (the "Grace patents"). In its answer to the counterclaim, RPI asserted that the

additional four patents were invalid.

As the case proceeded through the discovery and claims construction stages, the original deadline of July 1, 2007 for completion of fact discovery was extended to July 1, 2008, and again to September 1, 2008. (RPI Case, Document No. 72). Although Adventus was aware of Calgon and AST early in the litigation,[1] it did not serve discovery requests on them until August 14, 2008, two weeks before the extended deadline. In addition, Adventus/ETI belatedly moved on November 12, 2008, to amend their answer and counter-claims, join two additional parties (Calgon and AST), and to restart discovery. (RPI Case, Document No. 114, p.19 asking for the "standard period of discovery as to the newly asserted counterclaims"). With a trial date of February 17, 2009 fast approaching, the motion was denied for failure to show good cause. (*Id*., Document No. 122). After a pre-trial conference with the parties, the Court accommodated the parties and rescheduled the trial date for January 19, 2010. (*Id*., Document No. 123).

On November 3, 2008 Adventus and ETI filed the present separate lawsuit based on alleged patent infringement of six patents, including patents '213 and '154, against Calgon and AST. *Adventus Americas, Inc. v. Calgon Carbon Corp.*, Case 3:07-cv-00153-RJC-DCK (the "Calgon Case"). Adventus and ETI acknowledge that they decided to file this action only after they did not receive requested discovery in the first case. (RPI Case, Document No. 117, p. 12). In fact, Adventus and ETI candidly acknowledge that they filed this action partly in an effort to obtain discovery. (*Id*. Document No. 132, p. 8 "indicating that a significant purpose [of the second case] was to obtain

---

[1] RPI identified Calgon as its supplier in disclosures in July 2007 and in depositions in mid-July 2008. In April 2008, Adventus and ETI referred to RPI's website, which identified AST as RPI's installer of BOS100®. Adventus acknowledged that "prior to the original deadline for filing motions, it was aware that Calgon manufactured BOS100® for Plaintiff and that AST was Plaintiff's preferred installer east of the Mississippi." (Document No.117, p.10).

discovery from Calgon"). Calgon and AST moved to dismiss (based on Plaintiffs' alleged lack of standing) or in the alternative to stay (based on the RPI Case already proceeding in this Court). (Calgon Case, Document Nos. 16, 18).

Subsequently, in the RPI case, Adventus and ETI belatedly sought further extension in order to depose Calgon as a non-party fact witness on May 15, 2009 and to conduct additional testing of Calgon's product, BOS100®. (RPI Case, Document No. 126). The motion was denied. (*Id.*, Document No. 188, Order, observing that Adventus and ETI had previously been provided a quantity of BOS100® for testing, that additional testing would likely require supplementation of expert reports and reopening of expert discovery, that numerous pending dispositive motions had already been extensively briefed, that inevitable delay would result, and further noting that Adventus/ETI had not shown any good reason for their failure to seek discovery earlier). Thus, due to repeated delays and the filing of a second related suit by Adventus and ETI, the Court is now faced with an awkward procedural posture regarding these two cases.

### III. Analysis

On December 15, 2008, Adventus and ETI filed an Amended Complaint, alleging that Calgon and AST are infringing U.S. Patent Nos. 5,266,213; 5,534,154; 5,411,664; 5,480,579; 5,618,427; and 6,083,394, "by making, using, offering to sell or selling a product branded as BOS100®." (Calgon Case, Document No. 9, ¶¶ 11, 24, 32, 48, 56). Adventus and ETI also allege that AST has engaged in unfair trade practices by making misrepresentations to owners of contaminated property in North Carolina about AST's use of BOS100® and the technology protected by patents '213 and '154. (*Id.* ¶¶ 59-65).

In the Amended Complaint, Adventus and ETI allege that the University of Waterloo owns

patents '213 and '154. (*Id.* ¶ 13, 21); that Adventus Intellectual Property Inc. ("AIP") owns the other four patents "by assignment from W.R. Grace & Co.-Conn." (*Id.* ¶¶ 29, 37, 45, 53); that ETI is the exclusive licensee of all six patents (*Id.* ¶ 10); and that Adventus is a sublicensee of all six patents. (*Id.*). However, Plaintiffs inconsistently indicate in their joint brief that ETI is the exclusive licensee on the '213 and '154 patents and that Adventus is the "exclusive domestic licensee" on the four Grace patents. (*Id.*, Document No. 24, p. 3).

Calgon and AST contend that "Plaintiffs do not own any of the six patents that they seek to assert in this action and they have not bothered to name the patent owners as parties." (*Id.*, Document Nos. 17, p. 1; 18, p. 1). Calgon and AST contend that Adventus is a sublicensee that lacks standing to sue for patent infringement. They point out that another federal court has found Adventus to be a non-exclusive sub-licensee lacking standing to bring suit on the '213 patent. *See Adventus Americas Inc. v. Innovative Environmental*, 2007 WL 704938 (N.D.Ill. 2007). Plaintiffs counter that the court also found, based on the evidence before it, that the exclusive license between the University of Waterloo and ETI conferred sufficient "substantial rights" in the '213 patent to ETI.

Calgon and AST argue that the Illinois decision is not controlling here and that the licensing agreement ("2004 Agreement") between ETI and the University of Waterloo did not transfer all substantial rights. Calgon and AST also assert that the present case has different circumstances from the Illinois case. Specifically, they assert that ETI did not bring this infringement action within three months of becoming aware of the alleged infringement, and thus, by operation of the "2004 Agreement," ETI's license became non-exclusive. (Calgon Case, Document No. 26, p. 4). Essentially, Calgon and AST argue that ETI forfeited its status as an exclusive licensee. The 2004 Agreement provides: "If EnviroMetal fails to initiate legal action against any and all infringers within

the aforesaid three (3) months notice period, the exclusive license granted by this Agreement shall become non-exclusive in the country or countries where patent infringement has occurred."). (*Id.*, Document No. 17-5, p. 9, ¶ 2.9(b)). ETI contends that it does have standing and that Calgon and AST are misreading the terms of the 2004 Agreement.

The threshold issue in determining standing in a patent infringement action is ownership of the patent. The Patent Act provides that the "patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (1988). The term "patentee" is defined by statute to include "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d).[2] An exclusive licensee may have a sufficient interest in the patent to have standing to sue. *Textile Prod., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed.Cir. 1998).

However, "[i]t is well settled that a non-exclusive licensee of a patent has no standing to sue for infringement." *Kalman v. The Berlyn Corp.*, 914 F.2d 1473 (Fed.Cir. 1990); *Sicom Sys. Ltd. v. Agilent Tech.*, 427 F.3d 971, 976 (Fed.Cir. 2005); and see, 3 Pat. L. Fundamentals § 19:4 (2d ed.). A non-exclusive license merely grants the holder "a privilege that protects him from a claim of infringement by the owner of the patent monopoly." *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed.Cir. 1995), *cert. denied*, 516 U.S. 907 (1995); *Abbott Lab. v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed.Cir. 1995).

In determining whether an exclusive licensee has standing to bring an action for patent infringement without joining the patent owner, the Court must examine "the substance of what was

---

[2]The granting of a patent restrains others from manufacturing, using or selling what is covered by the patent. *United States v. Wood*, 226 F.2d 924 (4th Cir. 1955). "While parties are free to assign some or all patent rights as they see fit based on their interests and objectives, this does not mean that the chosen method of division will satisfy standing requirements." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1341 (Fed. Cir. 2007).

granted" to the exclusive licensee. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed.Cir. 2000); *Textile Prod.*, 134 F.3d at 1484 ("Determining whether a licensee is an exclusive licensee or a bare licensee is a question of ascertaining the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant.").

Plaintiffs have the burden of demonstrating standing to sue under each patent. *Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1268 (Fed. Cir. 2004); *Ortho*, Inc., 52 F.3d at 1032-33. Standing cannot be inferred merely from the allegations of the pleadings, but rather, must be shown by evidence of record. *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F.Supp. 305, 307 (D.Del. 1995).

The present Plaintiffs have not produced a written agreement documenting that Adventus Intellectual Property, Inc. ("AIP") transferred all substantial rights under AIP's "Grace" Patents to Plaintiffs. (Document No. 26, p. 9). Instead, Plaintiffs have provided the affidavit of Dr. Alan Seech, the CEO of AIP, stating that Adventus is the "exclusive licensee and has all substantial rights" to the four AIP/Grace Patents. (Document No. 24, Ex. B, Seech Decl. ¶ 8). Calgon and AST point out that this conclusory statement is insufficient to show standing. The affidavit also describes business relationships between various entities, including AIP (a holding company which owns the four Grace patents) and Adventus (described as "the U.S. operating subsidiary" of AIP). (*Id*. ¶ 7).[3] Adventus has not provided any other evidence to show its standing, and thus, Calgon and AST assert that Adventus has not carried its burden.

With respect to the '213 and '154 patents, Calgon and AST submitted a copy of a 2004

---

[3]The affidavit indicates that Adventus was founded in 2003 as a "wholly owned subsidiary" of its parent company, Adventus Remediation Technologies Inc., which merged with Envirometal in 2004. (*Id*. ¶ 3).

agreement between ETI and the University of Waterloo granting an exclusive license to ETI for those patents. (Calgon Case, Document Nos. 17-5, 19-2).[4] The determination of standing for ETI would require analysis of the terms of the 2004 Agreement to determine "the substance of what was granted" to ETI.

It should be emphasized that a dismissal for lack of standing is jurisdictional and is not an adjudication on the merits. *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1370 (Fed.Cir. 2003). "Ordinarily, dismissal for lack of standing is without prejudice." *Fieldturf, Inc. v. Sw. Recreational Indus.*, 357 F.3d 1266, 1269 (Fed.Cir. 2004); and see, *University of Pittsburgh v. Varian Medical Systems, Inc.*, 569 F.3d 1328, 1332 (3rd Cir. 2009) (remanding because trial court should have dismissed without prejudice, which would permit the party lacking standing to cure the defect and file again). Although Calgon and AST argue for dismissal with prejudice, "dismissal with prejudice is generally inappropriate where the standing defect can be cured." *Sicom Sys.*, 427 F.3d at 980. If this case were dismissed without prejudice for lack of standing, and assuming the failure to show standing is curable, Plaintiffs would likely return to court to refile this action. A temporary stay, which is otherwise appropriate, would afford the parties time to amend or supplement the record with any evidence needed to show standing on all six patents. This would eliminate any possible need to refile the case.

Calgon and AST argue that a stay of this case is appropriate for several more reasons. Calgon points out that "five out of the six patents at issue in this case are method patents" and that Plaintiffs' Amended Complaint does not allege that Calgon actually treated any contaminated

---

[4]The 2004 Agreement also refers to a 1997 licensing agreement between ETI and the University of Waterloo for the '213 and '154 patents. (*Id.*, p. 5).

groundwater. (Calgon Case, Document No. 26, p. 12). Hence, any infringement by Calgon would be "indirect and dependent upon proof that RPI is a direct infringer." (*Id*.) Calgon contends that "a decision or settlement in the RPI Action could make this action unnecessary." (*Id*., Document No. 16, p. 3). Absent direct infringement, there can be no contributory infringement. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961); *FMC Corp. v. Up-Right, Inc*., 21 F.3d 1073, 1076 (Fed. Cir. 1994). Adventus and ETI concede this legal point (*Id*., Document No. 24, p. 20), but nonetheless insist that they may bring an infringement action against Calgon and AST.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *International Nickel Co., Inc., v. Martin J. Barry, Inc.*, 204 F.2d 583, 586 (4th Cir. 1953) (quoting *Landis v. N. American Co.*, 299 U.S. 248, 254-55 (1936)). Courts have broad discretion to manage their docket. *Id*. (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co*., 342 U.S. 180, 183 (1952)). In *International Nickel*, the Fourth Circuit Court of Appeals approved the trial court's stay of the second of two related patent infringement actions and observed that the validity of the patent would be tried in the case filed first. (*Id*.). The Court emphasized that a patentee is "not entitled as a matter of right to have two federal courts trying the same issue at the same time when court dockets are crowded and other litigants have a right to a hearing." (*Id*.). The record reflects that the proceedings in the RPI action have progressed further than the present case, *i.e*. claim construction is complete and numerous motions for summary judgment are pending.

Although Plaintiffs now generally complain that discovery from Calgon and AST "is critical to a full and fair adjudication of the present issues, regardless of whether it is done in one trial or two" (Document No. 24, p. 17), it was incumbent upon Plaintiffs to conduct timely discovery in the

RPI action. The Court generously extended the discovery deadline in the RPI action several times (in excess of a full year) to accommodate the parties, and Adventus and ETI can hardly claim that they were given insufficient time to conduct discovery there. Although Adventus and ETI contend that "the evidence that may be discovered from [Calgon and AST] is likely to be highly relevant in the RPI Action [as] to whether Plaintiffs' patents are infringed" (*Id.*, p. 20), Plaintiffs have already been given samples of Calgon's BOS100® product for testing in the RPI action. The fact that Adventus and ETI did not timely move to join Calgon and AST in the RPI action or request discovery in time to be completed by the extended deadline in the RPI action does not mean the Court must indulge their present strategy of using this second case to obtain discovery for the first.

After considering the parties' extensive arguments, the evidence of record, and applicable authority, the undersigned finds that the better course is to stay this case, pending resolution of the RPI case. When the stay is lifted, the Defendants may reassert their motions for dismissal based on lack of standing, if circumstances warrant.

**IT IS, THEREFORE, ORDERED** that:

1) given that the Motions are argued in the alternative, the undersigned will construe them as motions to stay; and

2) Calgon's "Motion to Stay" (Document No. 16) is **GRANTED**; and

3) AST's "Motion to Stay" (Document No. 18) is **GRANTED**.

Signed: September 15, 2009

David C. Keesler
United States Magistrate Judge